IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO.  08 - _____** |
| v. | : | DATE FILED: _____ |
| **MICHAEL SULLIVAN** | : | VIOLATION:<br>18 U.S.C. § 1344 (bank fraud - 1 count) |
| | : | |

# INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

### BACKGROUND

At all times material to this information:

1. Sullivan Motors, Inc. ("Sullivan Motors") was a used automobile dealership with lots in Fairless Hills, Pennsylvania, and Burlington, New Jersey.

2. Defendant MICHAEL SULLIVAN was the owner, operator, and president of Sullivan Motors.

3. Yardville National Bank was a financial institution whose main offices were in Trenton, New Jersey, and whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC Number 6515).

4. From in or about July 2007 through in or about January 2008, in Fairless Hills, in the Eastern District of Pennsylvania, and elsewhere, defendant

**MICHAEL SULLIVAN**

knowingly executed, and attempted to execute, and aided and abetted the execution and

attempted execution of, a scheme to defraud Yardville National Bank and to obtain monies owned by and under the care, custody, and control of Yardville National Bank by means of false and fraudulent pretenses, representations, and promises.

## THE SCHEME

5. On or about July 16, 2007, on behalf of Sullivan Motors, defendant MICHAEL SULLIVAN entered into a Dealer Inventory Loan and Security Agreement ("the loan agreement") with Yardville National Bank ("Yardville"). The loan agreement provided defendant SULLIVAN with a revolving line of credit of up to $900,000. The outstanding balance on the line of credit was secured by the automobiles that defendant SULLIVAN purchased and offered for sale at Sullivan Motors. This type of loan agreement is also known as a "floor plan," which is a system of financing that permits a dealer to borrow money to buy automobiles, which become the security for the loan that is repaid when automobiles are sold.

6. Under the terms of the loan agreement, Yardville required defendant MICHAEL SULLIVAN to provide it with a copy of the title for any automobile that he had purchased and was using as collateral for the line of credit. When defendant SULLIVAN sold any automobile that was collateral on the line of credit, he was required to notify Yardville and repay the principal portion of the loan secured by that automobile. To remain in compliance with the terms of the loan agreement, defendant SULLIVAN could borrow funds under the line of credit only to the extent that the funds were secured by the collateral of the automobiles that were offered for sale at Sullivan Motors.

7. Defendant MICHAEL SULLIVAN obtained and retained funds from Yardville under the loan agreement that he represented were secured by the collateral of

automobiles on his floor plan, when in fact, as defendant SULLIVAN well knew, the collateral did not exist.

    8.  In particular, defendant MICHAEL SULLIVAN defrauded Yardville by (1) using as collateral automobiles that he had already sold; and (2) failing to repay Yardville for automobiles that he had earlier used for collateral to obtain funds and then later sold.

    9.  In a further misrepresentation to Yardville in connection with this loan agreement, defendant MICHAEL SULLIVAN used the same automobiles that he had used for collateral on the line of credit with Yardville to collateralize loans with other financial institutions.  Therefore, fraudulently in violation of the loan agreement, Yardville's financial interest in any such automobile was compromised because Yardville could not ensure its interest in defendant SULLIVAN's property.

    10.  In or about January 2008, defendant MICHAEL SULLIVAN and Sullivan Motors defaulted on the loan agreement, and Yardville attempted to exercise its rights to seize the automobiles that defendant SULLIVAN had pledged as collateral for the funds he had borrowed.  At that time, of the approximately 60 automobiles that defendant SULLIVAN had pledged as collateral on the floor plan to support a loan of approximately $900,000, as defendant SULLIVAN well knew, only approximately 17 automobiles were available to Yardville to seize. Defendant SULLIVAN had thus misrepresented to Yardville that Sullivan Motors possessed approximately 43 automobiles that were listed on the floor plan as collateral under the loan agreement.

    11.  As a result of this fraud scheme, defendant MICHAEL SULLIVAN caused Yardville to lose approximately $648,106 in funds that it had loaned to Sullivan Motors but

could not collect because defendant SULLIVAN had misrepresented the status of the collateral to support the loan.

All in violation of Title 18, United States Code, Sections 1344 and 2.

_____
**LAURIE MAGID**
**Acting United States Attorney**